UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MIA SHARP ATHERTON,<br><br>        Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | 5:25-CV-05039-DW<br><br><br><br>ORDER |

### INTRODUCTION

On April 24, 2025, claimant Mia Sharp Atherton filed a complaint seeking judicial review of the final decision of the Commissioner of the Social Security Administration, which found her not disabled.  (Doc. 1).  Atherton filed a brief asking the court to reverse the Commission and to remand. (Doc. 12). Defendant argues that the Commissioner should be affirmed and the Plaintiff should be denied benefits.

This court may review a final decision by the Commissioner, pursuant to 42 U.S.C. § 405(g).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 42 U.S.C. § 405(g). (Doc. 4).  The Court has reviewed the parties' briefs and the administrative record, including the transcripts and medical evidence.  For the reasons stated below, the decision of the Commissioner is reversed and remanded.

1

**PROCEDURAL HISTORY**

On September 20, 2021, Atherton filed an application for Social Security disability benefits alleging an onset of disability date of January 1, 2011.[1]  (AR at p. 18).[2]  The claim was initially denied on May 26, 2022, and denied upon reconsideration on February 2, 2023.  (AR at p.18).  Atherton requested an administrative hearing, and one was held on January 4, 2024, with a vocational expert also appearing.  Id.  On January 29, 2024, Administrative Law Judge (hereinafter "ALJ") John W. Rolph issued a written decision denying benefits.  (AR at pp. 18-31).  Atherton subsequently sought appellate review; her request was denied on February 26, 2025, making the decision of the ALJ final.  (AR at p. 1).  It is from this decision that Atherton timely appeals.  (Doc. 1).

**STANDARD OF REVIEW**

The issue before this court is whether the ALJ's decision that Atherton was not under a disability, as defined in the Social Security Act, from September 1, 2013, through the present, is supported by substantial evidence on the record.  42 U.S.C. § 405(g); Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001).   "Substantial evidence is less than a preponderance [] but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

---

[1] Atherton's attorney states that the onset date may be a typographical error by Atherton, who was unrepresented at the time of filing the claim.  (Doc. 12).
[2] The court will cite to information in the administrative record as "AR at p. ___."

2

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by "good reason" and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed, 399 F.3d at 920 (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

The SSA established a sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment— one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140,  143-44 (8th Cir. 1998).  The plaintiff bears the burden of proof at steps one through four.  Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994).  At step five, the burden of proof shifts to the Commissioner.  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).  "[E]ven when the burden of production shifts to the Commissioner," "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant."  Id.

<strong>ANALAYSIS</strong>

The ALJ applied the five-step test and determined that Atherton was not disabled.  (AR at pp. 18-31).

### STEP ONE

At step one, the ALJ deferred on this finding because the record was not clear and his finding that Atherton was disabled at a later step rendered this step as moot.  On remand, step one will need to be resolved by the ALJ.  (AR at p. 20-21).

### STEP TWO

In evaluating step two, the ALJ found that Atherton suffered from these severe impairments: "chronic obstructive pulmonary disorder (COPD)/emphysema; seizure disorder, with history of benign neoplasm of the brain; GERD; diverticulosis/diverticulitis; history of Clostridium Difficile (C-Diff) infection; malabsorption syndrome; cyclical vomiting; obesity; depressive

4

disorder; anxiety disorder; and trauma disorder (PTSF)."[3]  (AR at pp. 21).

Atherton does not challenge this finding.

### STEP THREE

At step three, the ALJ determines whether claimant's impairment or

combination of impairments meets or medically equals the criteria of an

impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1").

20 CFR §§ 404.1520(d), 404.1525 and 404.1526. The ALJ determined Atherton

"does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments. (AR at pp. 23-

24).  Atherton does not challenge this finding.

### STEP FOUR

At the outset of step four, the ALJ must determine a claimant's residual

functional capacity (RFC). 20 CFR § 404.1520(e).  The ALJ found the claim

"has the residual functional capacity to perform light work[4] as defined in 20

CFR 404.1567(b) with some exceptions.  Specifically, the ALJ found Atherton

---

[3] Atherton had additional impairments such as depression; insomnia; colon polyps; paroxysmal supraventricular tachycardia; unintended weight loss; elevated blood pressure; small kidney cysts; fatty liver; acute respiratory failure, with hypoxemia; acute stress disorder; however, these were deemed non-severe by the ALJ because they were not reasonably expected to have no more than a minimal effect on the claimant's ability to work.  (AR at p. 21).

[4]

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

requires a sit/stand option, at 30 to 45-minute intervals, for 3 to 5-minutes at a time, during which period she may remain on task.  The claimant may never climb ladders, ropes, and scaffolds.  She may occasionally climb ramps and stairs, kneels, crouch, and crawl.  She may frequently balance and stoop.  The claimant must avoid more than occasional exposure to extreme heat, concentrate pulmonary irritants (such as fumes, orders, dust, gasses, chemical), and poorly ventilated spaces.  She must avoid all exposures to hazards such as dangerous moving machinery and unsecured heights.  The claimant requires access to restroom facilities in the workplace.  The claimant can learn, remember, and perform simple, detailed, and complex work tasks involving simple, detailed, and complex work instructions.  She can attend, concentrate, and maintain pace for simple, detailed, and complex work tasks for two hours at a time with normal breaks.  She may have frequent contact with supervisors and coworkers.  She may have occasional interaction with the public." (AR at p. 25).  The ALJ found that Atherton's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistent and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . ." (AR at p. 26).  Atherton challenges this finding.

6

**STEP FIVE**

At step five, the ALJ found that based on the testimony of the vocational expert, Atherton has the residual functional capacity to perform her past relevant work.

**DICUSSION**

Atherton asserts that the ALJ's residual functional capacity finding is flawed because "the ALJ failed to comply with proper legal standard by failing to adequately account for Atherton's cyclic vomiting syndrome and limitations in residual functional capacity." (Doc. 12 at p. 1). The Commissioner argues that "substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform a range of light exertional work with a sit-stand option and access to restroom and subject to postural, environmental, and mental limitations." (Doc. 19 at p. 7). The Commissioner asserts that the "the ALJ weighed the evidence, including medical evidence, medical opinions, prior administrative medical findings, and Plaintiff's allegations, and assessed Plaintiff's RFC based on his consideration of the record as a whole." Id. at p. 8). The Commissioner points out that the ALJ did find Atherton's cyclic vomiting syndrome to be a severe impairment and properly formulated this into his RFC findings. Id.

In response, Atherton argues that the ALJ failed to properly account for the episodic nature of the cyclical vomiting syndrome in the limitations in the RFC. The court agrees. The ALJ's opinion improperly discounts Atherton's cyclic vomiting syndrome. The ALJ stated, Atherton "claimed she has been told

7

she has abdominal, or 'stomach' migraines.  That diagnosis is not documented in the records.  There is no question that the claimant's stomach issues are severe.  They have been diagnosed variously as gastritis, GERD, lactose intolerance, bile acid malabsorption syndrome/bile duodenogastric reflux. . . Objective testing has not provided a clear diagnosis for the claimant's GI issues." (AR at p. 27).  The ALJ concluded, "Whatever the cause of the claimants' GI issues, she requires access to restroom facilities, a restriction that has been included in her RFC." (AR at p. 28).

Atherton's cyclical vomiting syndrome was addressed at the Mayo clinic in 2020.  (AR at pp. 462).  On November 8, 2023, and April 24, 2024, Atherton saw her primary care provider, Marie Patton, CNP, who also diagnosed Atherton with cyclical vomiting syndrome.  (AR 39-44, 136)

The Appeals Council declined to consider new and material evidence submitted to them.  However, these records are significant.  The most recent medical records before the ALJ was from January 17, 2023.  However, since that date, Atherton was hospitalized from November 11, 2023 through November 3, 2023 where the a cardiologist discussed Atherton's cyclical vomiting syndrome.  (AR at p. 67-163).  Following her hospitalization, Atherton followed up with her primary care provider, Marie Patton, which documented, that Atherton "had an [e]pisode of her recurrent nausea/vomiting that brought on some chest discomfort.  She thought maybe it was r/t the retching.  Her husband brought her to the ER . . .Cardiology feels her nausea and vomiting is due to her cyclic vomiting syndrome." (AR at p. 39-40).  The failure of the ALJ

8

to review these records and the denial of the Appeal Counsel to consider them was in error.

Likewise, the ALJ failed to discuss or consider the following: 1) employer Brad Sharp's statement that Atherton had frequent absences and worked irregular hours and that her productivity was only 50% or less than other employees (AR at pp. 311-312); 2) employer Nathan Hodson's statement that Atherson has episodes that keep her from working for multiple days at a time (AR at p. 165); 3) coworker Nicole Benny's statement that Atherton misses 2-3 days of work at a time due to Atherton's illness (AR at 164); and 4) husband's testimony that Atherton's symptoms are so severe that they require emergency room visits and hospitalization (AR 166).

The court finds that the ALJ's findings regarding Atherton's Residual Functional Capacity is not supported by the relevant evidence in the record as a whole.  The ALJ has a duty to fully and fairly develop the record and to investigate the facts and develop the arguments both for and against granting benefits.  Sims v. Apfel, 530 U.S. 103, 111 (2000).  The court finds these medical records to be relevant evidence, which was not considered by the ALJ.  Atherton was not represented at the October 4, 2018, hearing.  (Doc. 29).  It would be unfair to both Atherton and the Commissioner for the court to engage in speculation or conjecture as to how the ALJ would evaluate the 2023 medical records, but there is a "reasonable likelihood" that these records would have an impact upon and change the Commissioner's decision.  Krogmeier, 194 F.2d at 1025. See also Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993)

9

("To be material, new evidence must be noncumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination.").

The court finds the recent medical records are relevant at step three as to whether Atherton's severe impairments or combination of impairments satisfies the medical equivalency provision of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; step four as to Atherton's credibility and the resulting RFC; and step five as to whether Atherton is disabled. It would be unfair and prejudicial to both parties to not require the Social Security Administration to properly develop the full record in the particular factual circumstances of this case. Haley, 258 F.3d at 750 ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.") (internal quotation marks and citation omitted).

The ALJ failed to obtain Atherton's recent medical records, discuss documentation from Atherton's employers and co-workers regarding Atherton's medical conditions affected her employment, and discuss the testimony from Atherton's husband's regarding the severity of Atherton's symptoms. These deficiencies in the ALJ's analysis "fairly detracts from [the Commissioner's] decision." Reed, 399 F.3d at 920 (quoting Haley, 258 F.3d at 747); Morse v. Shalala, 32 F.3d 1228, 1229 (8th Cir. 1994).

10

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Doc. 12) is granted.  It is further

ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with this decision.

DATED this 30th day of March, 2026.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge

11